# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Wendi Logan, | : | |
| Plaintiff, | : | |
| v. | : | No.: _____ |
| Garda CL Atlantic, Inc. | : | **JURY DEMANDED** |
| Defendant. | : | |

## CIVIL ACTION — COMPLAINT

Ms. Wendi Logan (hereinafter "Ms. Logan" or "Plaintiff"), by and through her undersigned attorneys, brings this complaint against the Defendant, Garda CL Atlantic, Inc. and alleges the following:

### I.  NATURE OF CLAIM

1. Plaintiff brings this lawsuit seeking recovery from Defendant for damages arising from the following causes of action: (a) violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* for failure to pay overtime and the minimum wage*;* (b) violation of Fair Labor Standards Act, 29 U.S.C. § 215(a)(3), for retaliation; (c) violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq*. ("ADA"); (d) violation of the Family and Medical Leave Act, as amended, 29 U.S.C. § 2601, *et seq*. ("FMLA") for retaliation; (e) violation of the Pennsylvania Wage Payment and Collection Law, 43 Pa C. S. §260.3, *et seq*. ("PWPCL"); and (f) violation of the Pennsylvania Minimum Wage Act, 43 Pa C. S. §333.101, *et seq*. ("PMWA").

## II. PARTIES, JURISDICTION AND VENUE

2.   Plaintiff, Wendi Logan, is an adult individual and citizen, residing at 926 North Warren Street, Apartment B5 Pottstown, PA 19464.

3.   Defendant, Garda CL Atlantic, Inc. d/b/a GardaWorld. (hereinafter "Defendant" or "GardaWorld"), is a Delaware corporation engaged in the financial security services, with a headquarters located at 4200 Governor Printz Blvd., Wilmington, DE 19802.

4.   GardaWorld owns and operates a facility in Berks County, Pennsylvania at 500 Corporate Center Drive, Reading, PA 19406

5.   Jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1343.

6.   Supplemental jurisdiction over the Plaintiff's state law claims is conferred pursuant to 28 U.S.C. § 1367.

7.   Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant conducts business in this district, and because a substantial part of the acts and omissions giving rise to the claims set forth herein occurred in this judicial district.  Plaintiff was working in the Eastern District of Pennsylvania at the time of the illegal actions by Defendant as set forth herein.

## III. ADMINISTRATIVE PROCEEDINGS

8.   On or about June 22, 2020, Ms. Logan filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was docketed as EEOC Charge No. 530-2020-02708, alleging disability discrimination, retaliation and wrongful discharge from her employment with GardaWorld, and dual filed with the Pennsylvania Human Relations Commission ("PHRC").

9. Ms. Logan has been advised of her individual right to bring a civil action by receiving a Notice of Rights from the EEOC, dated June 29, 2020.

10. Ms. Logan has exhausted the administrative remedies available to her, and all necessary and appropriate administrative prerequisites to the filing of this Complaint have occurred and been satisfied.

### IV. FACTS

11. GardaWorld hired Ms. Logan on or about June 24, 2017 to work as a Cash Vault Service Supervisor at their Reading, PA location.

12. As a Cash Vault Service Supervisor, Ms. Logan was responsible for the routine task of preparing daily spreadsheets regarding ATM activity for GardaWorld's clients. Ms. Logan did not supervise anyone, and did not exercise discretion and independent judgment as to matters of significance.

13. Upon being hired, GardaWorld classified Ms. Logan a non-exempt employee pursuant to the minimum wage and overtime requirements of the FLSA, PWPCL, and the PMWA. Ms. Logan was thus paid an hourly rate and received time-and-a-half for time worked in excess of forty hours per week.

14. In or around November 2017, GardaWorld notified Ms. Logan that it was reclassifying her position as "exempt" to FLSA's minimum wage and overtime requirements.

15. Upon being reclassified as "exempt" GardaWorld stopped paying Ms. Logan an hourly wage of approximately $15.00 per hour and began paying her an annual salary of approximately $32,000. Despite this reclassification, Ms. Logan's daily responsibilities remained the same.

16. Over the intervening months, GardaWorld reduced Ms. Logan's salary on two occasions.

17. While Ms. Logan ordinarily worked from 8:00 a.m. until 4:30 p.m Monday through Friday, GardaWorld expected Ms. Logan to remain at work each day until she finished her daily responsibilities. Accordingly, Ms. Logan frequently remained at work until after 6:00 p.m.

18. Additionally, in the summer of 2019 GardaWorld required Ms. Logan to begin work each day at 6:30 a.m.

19. Nevertheless, GardaWorld would not pay Ms. Logan overtime for any time she worked in excess of forty hours for that week.

20. In October 2019, Ms. Logan submitted a complaint to the United States Department of Labor's Wage and Hour Division ("WHD"). In this complaint, Ms. Logan alleged that GardaWorld had failed to pay proper overtime for all of the hours that she worked in violation of the FLSA.

21. On October 31, 2019 the WHD notified Ms. Logan that it could not investigate her complaint due to the large number of complaints that it received each year.

22. GardaWorld was aware that Ms. Logan had filed a complaint with the WHD. On several occasions, Branch Manager Jeanne Weidner told Ms. Logan because of her complaint that she had to provide WHD with timesheets and other documents.

23. On November 20, 2019 Ms. Logan emailed Senior Human Resources Director Paul Logosso. In this email, Ms. Logan notified GardWorld that she believes that GardaWorld should be required to pay her overtime for every hour worked in

excess of forty hours per week as she believed that the exemptions to the FLSA's minimum wage and overtime requirements did not apply to her or her position.

24. On November 21, 2019 Mr. Logosso responded by telling Ms. Logan that she is involved in the "hiring of personnel and discipline/management of performance as well as making decisions re the time and attendance of personnel under your supervision, etc." [sic].

25. In response, on November 25, 2019 Ms. Logan wrote "…my job has been clearly classified incorrect. I am not 'Exempt' as I explained in the first email I sent. I understand what a supervisor role is and I also know what job I actually perform on a daily basis at [GardaWorld]…I do not supervise anyone. I have trained 1 employee to perform analyst duties in my absence she started with [GardaWorld] in May of 2019. Never did I fit the criteria of 'Exempt.' … I should be paid and compensated and classified by what I actually do and what job duties I actually perform day in and day out. Which are not supervisor duties and responsibilities at all. They never have been." [sic]..

26. At this point, GardaWorld employees began to harass Ms. Logan by insulting her intelligence and directing epithets towards her, but otherwise ignoring Ms. Logan and refusing to talk with her.

27. In late November 2017, Ms. Weidner removed Ms. Logan from her position and began assigning her menial, janitorial work. Ms. Logan's duties were assumed by Samantha Perez. Upon taking over for Ms. Logan, Ms. Perez said that "a monkey" could have done Ms. Logan's job.

28. Ms. Logan filed a complaint about this abusive treatment with Mr. Logosso. While a meeting was held on December 12, 2019 regarding Ms. Logan's

complaint, GardaWorld failed to take any remedial action to address the abuse directed at Ms. Logan.

29. On January 7, 2020 Ms. Logan filed a complaint with the Commonwealth of Pennsylvania's Department of Labor and Industry Bureau of Labor Law Compliance alleging that GardaWorld failed to pay proper overtime for all of the hours that she worked in violation of the PWPCL.

30. Over the following weeks, Bureau Investigator Salvatore Piccillo contacted and attempted to contact Ms. Weidner regarding Ms. Logan's complaint, and attempted to convene a meeting in order to discuss Ms. Logan's allegations. However, Investigator Piccillo closed the investigation on February 18, 2020.

31. The harassment that Ms. Logan began experiencing in November 2019 continued over the following months. Ms. Weidner and other GardaWorld supervisory personnel directed Ms. Logan's coworkers to stop speaking with her.

32. Due to this harassment, Ms. Logan was diagnosed with anxiety and depression. These disabling conditions impacted one or more of Ms. Logan's daily life activities, and constitute serious health conditions.

33. Upon the advice of her doctor, Dr, Kimberly Richardson, Ms. Logan commenced on a period of continuous medical leave beginning on February 6, 2020.

34. Ms. Logan's continuous FMLA leave was supposed to end on May 3, 2020. However, Dr. Richardson had not yet cleared Ms. Logan to return to work. Ms. Logan requested that GardaWorld provide her with the necessary paperwork so that she could apply for an extension of her medical leave as a reasonable accommodation.

35. GardaWorld provided Ms. Logan with the necessary paperwork so that she could apply for an extension of medical leave. However, Dr. Richardson requested that

GardaWorld provide a copy of Ms. Logan's job description so that he could evaluate whether any additional accommodations would help Ms. Logan return to work. Gardaworld refused to provide a copy of the job description.

36. Due to Gardaworld's failure to provide Ms. Logan and Dr. Richardson with a job description, Ms. Logan did not return to work upon the expiration of her FMLA leave.

37. GardaWorld mailed Ms. Logan a letter on May 22, 2020. According to this letter, Ms. Logan's position was eliminated as of May 6, 2020 due a COVID-19 related workforce reduction.

38. Upon information and belief, Ms. Logan's position was the only position GardaWorld eliminated at its Reading, PA facilities. While other employees were furloughed, those employees have been recalled to full employment.

## V. CAUSES OF ACTION

### Count I
### Violation of Fair Labor Standards Act
29 U.S.C. §§ 201, *et seq*.

39. Plaintiff realleges and incorporates by reference paragraphs 1 though 38 above if as they were set forth herein verbatim.

40. At all times pertinent to this Complaint, Defendant was an "enterprise engaged in commerce or in the production of goods for commerce" as that term is defined by 29 U.S.C. § 203(s).

41. At all times pertinent to this Complaint, Plaintiff as an employee of Defendant was "engaged in commerce or in the production of goods for commerce" as that term is defined within 29 U.S.C. §207(a).

42. At all times relevant herein, each Defendant was a "employer" of Plaintiff as that term is defined by 29 U.S.C. § 203(d) of the Fair Labor Standards Act.

43. Defendant employed Plaintiff for workweeks longer than forty hours without compensating Plaintiff at a rate of one and on-half times his regular rate of pay as required by 29 U.S.C. § 207(a).

44. Plaintiff is entitled to unpaid overtime compensation at the rate of one-and-a-half times their regular rate of pay for all hours worked in excess of forty hours in a workweek, liquidated damages in an equal amount, and his reasonable attorneys' fees and costs incurred in bringing this action pursuant to 29 U.S.C. § 216(b).

**Count II**
**Retaliation under Fair Labor Standards Act**
29 U.S.C. § 215(a)(3)

45. Plaintiff realleges and incorporates paragraphs 1 though 43 above as if they were set forth herein verbatim.

46. Plaintiff engaged in conduct protected by the FLSA when she complained to Defendant, WHD, and the Bureau of Labor Law Compliance about her wrongful "exempt" classification.

47. Defendant terminated Plaintiff in retaliation for having made these complaints.

48. By their actions alleged above, Defendant intentionally, willfully, knowingly, and / or recklessly violated the controlling provisions of the FLSA along with the controlling regulations associated with such laws, prohibiting retaliation for the making of a complaint concerning wage and hour issues in the workplace

49. Plaintiff has lost wages because of the wrongful retaliation by the Defendant.

50. As a result of Defendant's violation of the anti-retaliation provisions of the FLSA and its associated regulations, Plaintiff has suffered damages in the nature of pain and suffering and emotional distress, and is entitled to the recovery of actual, compensatory and punitive damages, as well as pre and post-judgment interest, attorneys' fees, costs, and such other compensation and legal remedies, and also including such declaratory and injunctive or other equitable relief, as the law allows.

**Count III**
**Violation of Americans with Disabilities Act**
42 U.S.C. §§ 120101, *et seq*.

51. Plaintiff realleges and incorporates paragraphs 1 though 50 above as if they were set forth herein verbatim.

52. Based on the foregoing, Plaintiff alleges that Defendant violated the ADA by subjecting her to discrimination on the basis of her actual and/or perceived disabilities and/or records of impairment.

53. Defendant also violated the ADA by failing to engage Plaintiff in the interactive process and provide her with reasonable accommodations for her disabilities

54. Defendant's conduct caused Plaintiff to sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, loss of tips as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of her earning power and capacity and a claim is made therefore.

55. Plaintiff prays that Defendant be required to provide all appropriate remedies available under the ADA.

## Count IV
## Retaliation under the Family Medical Leave Act
29 U.S.C. §§ 2601, *et seq*.

56. Plaintiff realleges and incorporates paragraphs 1 though 55 above as if they were set forth herein verbatim.

57. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C) Plaintiff was eligible for Family and Medical Leave Act Leave.

58. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA Leave medical leave due to her serious medical condition.

59. Plaintiff gave Defendant sufficient information to allow it to understand that she needed leave for FMLA-qualifying reasons.

60. Defendant approved Plaintiff for leave under the FMLA.

61. Nonetheless, Defendant terminated Plaintiff.

62. Defendant's motivation for terminating Plaintiff was connected causally to her assertion of FMLA leave.

63. Defendant acted in bad faith by retaliating against Plaintiff in violation of the FMLA.

64. As a direct and proximate result of Defendant's discharge of Plaintiff, Plaintiff is and was deprived economic and non-economic benefits resulting from Defendant's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

65. Plaintiff demands judgment against Defendant for all available equitable relief including, but not limited to: reinstatement to job position, full restoration of all

leave and health benefits, to which Plaintiff was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

66.     Plaintiff further demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

## Count V
**Violation of Pennsylvania Wage Payment and Collection Law**
43 P.S. § 260.1, *et seq*.

67.     Plaintiff realleges and incorporates by reference paragraphs 1 though 66 above as if they were set forth herein verbatim.

68.     This count sets forth a claim arising pursuant to the PWPCL, 43 P.S. §§ 260.1, *et seq*. The PWPCL requires Defendant to timely pay full wages due to Plaintiff and provides statutory damages for the failure to timely pay all wages due.

69.     Defendant is an "employer" as defined by PPWPCL.

70.     Defendant willfully failed to pay Plaintiff all amounts of wages earned within the time limits set forth in PWPCL, 43 P.S. §§ 260.1, *et seq*.

71.     Plaintiff is entitled to wages and overtime based on all hours worked pursuant to the PWPCL.

## Count VI
**Violation of Pennsylvania Minimum Wage Act**
43 P.S. § 333.101, *et seq*.

72. Plaintiff realleges and incorporates by reference paragraphs 1 though 70 above as if they were set forth herein verbatim.

73. Defendant is an employer covered by the PMWA.

74. Pursuant to the PMWA, employees who are not exempt from the overtime provisions of the law are entitled to compensation at the rat of one and one-half times their regular rate for all hours worked over 40 in any work week. *See* 43 P.S. . § 333.104.

75. Plaintiff was not an "exempt" employee for purposes of the overtime provisions of the PMWA.

76. The PMWA requires Defendant to timely pay full wages due to Plaintiff.

77. The PMWA provides statutory damages for the failure to timely pay all wages due.

78. Defendant willfully failed to pay Plaintiff all amounts of wages earned, including overtime, within the time limits set forth in the PMWA.

79. Plaintiff is entitled to wages and overtime based on all hours worked pursuant to the PMWA.

80. By failing to timely pay full wages and overtime, Defendant violated Plaintiff's rights protected by the minimum wage and overtime provisions of the PMWA, 43 P.S. § 333.104(a.1) and 43 P.S. § 333.113, and its implementing regulations.

81. As a result of Defendant's violation of the PMWA, Plaintiff is entitled to recover the amount of his unpaid wages, together with costs and reasonable attorneys' fees. PMWA, 43 P.S. §§ 333.113.

[THIS SPACE IS INTENTIONALLY LEFT BLANK]

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Wendi Logan demands judgment in her favor and against Defendant GardaWorld in an amount in excess of $150,000.00 together with:

A. Reinstatement of position with a comparable salary and benefits including, medical, vacation and sick time, in addition to any other associated employee benefits to which she may be entitled.

B. Compensatory damages, including but not limited to: back pay, front pay, past lost wages, future lost wages, lost pay increases, lost pay incentives, lost opportunity, lost benefits, lost future earning capacity, injury to reputation, mental and emotional distress, pain and suffering;

C. Liquidated damages;

D. Punitive damages;

E. Attorneys fees and costs of suit;

F. Interest, delay damages; and,

G. Any other further relief this Court deems just proper and equitable.

## VII. DEMAND FOR TRIAL BY JURY

Plaintiff Wendi Logan hereby demands a trial by jury.

RESPECTFULLY SUBMITTED:

LAW OFFICES OF ERIC A. SHORE, P.C.

Dated:  July 2, 2020

/s Brian M. Doyle

Brian M. Doyle (Pa. Id. No. 319475)
Two Penn Center
1500 JFK Blvd., Suite 1240
Philadelphia, PA  19102
Tel.:  (267) 546-0124
Email:  briand@ericshore.com

**VERIFICATION**

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.S § 4904, relating to unsworn falsification to authorities.

Jul 2, 2020
Date

*Wendi Logan* (Jul 2, 2020 11:46 EDT)
Wendi Logan